[No. 31026. Department Two. January 13, 1950.]

ROY LANKFORD, *Respondent,* v. WILLIAM TOMBARI, *Appellant.*[1]

[1]Reported in 213 P. (2d) 627.

414

*Edge, Davenport & Edge,* for appellant.

*Frederick A. Clanton,* for respondent.

MALLERY, J.—This is an appeal from a fifteen-thousand-dollar judgment for plaintiff in a suit based on two causes of action, one for alienation of affections, the other for criminal conversation.

Respondent married his wife, Charlotte, in 1938. She bore him two children and was a good wife and mother. In May, 1944, he moved his family to a home on Marshall street in Spokane and the following month entered the navy.

In February, 1945, she moved to a house on Mission street, where she and the children lived with her sister's mother-in-law and her sister's two children. The Mission street residence was fifty feet from appellant's pharmacy.

She became acquainted with appellant in April, 1945. In May, respondent asked her to join him in San Francisco when he anticipated his final leave prior to embarkation for overseas. She refused to join him. Thereafter, her infrequent letters evidenced less and less affection for him. June 10, 1945, Charlotte became a clerk in appellant's pharmacy. Sometimes she worked from nine a. m. until six p. m.; other times she worked from one p. m. until midnight, when the pharmacy closed.

She permitted appellant to take her home two or three nights a week as late as three a. m., permitted him to come into her home at that hour, and permitted him to use the family car.

Respondent returned from overseas in February, 1946, and moved his family back to the Marshall street residence. He discovered that she was not pleased by his return, but they continued to live together and, in April, 1946, moved to a home on Farr road, four and a half miles from the pharmacy.

Her indifferent attitude toward him grew into open hostility during the year they lived on Farr road. She denied him his marital prerogatives, was indifferent in performing her duties as mother and housekeeper, and repeatedly told him that if he did not like her behavior he could take the children and leave. When, eventually, he accused her of consorting with another man, she admitted it but would not reveal his identity.

After his return from the service, respondent worked long hours establishing his new business, a service station. He seldom returned home prior to nine p. m., a fact known to appellant.

During the year that they lived on Farr road, she and appellant established a pattern of behavior that attracted the attention of neighbors and of the young women who cared for the children. They would arrive at the Lankford home shortly after five p. m. two or three times a week in a red pick-up truck driven by appellant. They would enter the house together, always leaving the children outside, and

appellant would remain an hour or more. Two or three times a week, appellant would have lunch with her at the Lankford residence. On more than one occasion, at the Lankford residence and at the pharmacy, she was observed to permit appellant to take improper liberties with her person. She was also observed to have thrown her arms around appellant at the pharmacy. On one occasion, she confided to the young lady that cared for her children that she loved appellant.

In April, 1947, at her insistence and with appellant's help, respondent removed the family to the Marshall street residence once more. They lived together there until October 21, 1947, and the behavior of the parties continued unchanged.

After she commenced to work for appellant, she was friendly with other young men who came to the pharmacy, which was a neighborhood gathering place. Several of appellant's employees or friends frequently escorted her home. One of them claimed to have had improper relations with her during this period. She evidenced no lasting affection for any of these others but consistently and affectionately consorted daily with appellant from the middle of 1944 until the so-called October 21st episode in 1947.

This occurred when respondent unexpectedly returned to his Marshall street residence at two p. m. and found Charlotte and appellant alone together in the house under circumstances clearly indicating adultery. Within a few moments, respondent packed his effects and moved out, taking the children with him. The familiar red pick-up truck was parked in front of the Marshall street residence all night October 21-22, 1947.

Subsequently, respondent obtained a divorce and custody of the children. The divorce complaint allegations are brought into issue here for the reason that they alleged her relations with other *men*. The jury was entitled to find that this was not an admission by respondent that appellant was not the person who had alienated his wife's affections, since it appears that, at the time the complaint was drafted, re-

spondent was uninformed of appellant's previous relationship with his wife and became informed of it only when it became necessary in preparing for trial to discover *all* the evidence obtainable. When the prior relationship was revealed in all its sordid detail, respondent commenced this action against appellant.

In appellant's challenge to the sufficiency of the evidence, he contends that an element of the tort of alienation of a wife's affections is a purpose to accomplish diminution of her affections for her husband. This may be granted.

■■ Alienation of affections is an intentional tort. Harper on Torts, §§ 256, 260; Restatement, Torts, § 683, 42 C. J. S. 317, Husband & Wife § 772; 27 Am. Jur. 129, Husband & Wife § 527. But the actor's purpose does not have to be proved independently of the acts which caused the alienation of affections. Seductive acts which alienate the affections of another's wife infer the actor's purpose, because, in the eyes of the law, a man intends the natural and probable consequences of his seductive acts. *Eklund v. Hackett,* 106 Wash. 287, 289, 291, 179 Pac. 803; *Grilnberger v. Brotherton,* 173 Wash. 292, 293, 22 P. (2d) 983. See, also, *Martin v. Ball,* 30 Ga. App. 729, 119 S. E. 222, and Prosser, *op. cit.,* § 101 (a), p. 922, n. 68.

■ The evidence as set out above is sufficient on the issues of intention and causation as to both causes to sustain a denial of the motion for nonsuit. *McBeath v. Northern Pac. R. Co.,* 32 Wn. (2d) 910, 913, 204 P. (2d) 248, 249. See, also, *Regenvetter v. Ball,* 131 Wash. 155, 159, 229 Pac. 321, and the discussion on this question as it relates to adultery in *Kenworthy v. Richmond,* 86 Wash. 127, 130-32, 149 Pac. 348.

Appellant contends that the two causes of action were improperly joined, and that respondent should have been required to elect between them on the ground that he was seeking a double recovery for a single alleged wrong.

■ An action for alienation of a wife's affections may be joined with an action for criminal conversation with the

same wife when they do not require different places of trial, when they are separately stated, and when the parties are the same. Rem. Rev. Stat. § 296 [P.P.C. § 86-25]. This is because the gist of alienation of affections is interference with a wife's mental attitude to her husband's personal detriment, while the gist of criminal conversation is adultery, which defiles the husband's interest in his marital prerogatives and beclouds the legitimacy of his children to his personal detriment. 27 Am. Jur. 123-128, 136-137, Husband & Wife, §§ 522-525, 536; 42 C. J. S. 315, 318, 321, Husband & Wife, §§ 660, 665, 668; Prosser, *op. cit.*, § 101; Harper, *op. cit.*, §§ 255, 256 and 258; 3 Restatement of Torts § 683 (c) and (r). See, also, Lippman, The Breakdown of Consortium, 1930, 30 Col. L. Rev. 651, 654-60.

On the issue of damages, appellant contends that the trial court erred in refusing to give his requested instruction No. 9, which stated:

"You are instructed that the only basis upon which damages are recoverable on the First Cause of Action is the same as in the Second Cause of Action.

"You are further instructed that in the event you find for the plaintiff on the First Cause of Action and for the plaintiff on the Second Cause of Action that the plaintiff is entitled to only one recovery for loss of consortium which is made up generally of the loss of company, the loss of wife's services and plaintiff's mental agony, lacerated feeling, wounded sensibilities and love.

"You are further instructed, however, that as to any loss of services there shall be a deduction because of the plaintiff's duty to clothe, support and care for his wife."

The requested instruction is not the law. It was not error to refuse it.

We will not consider the fifth assignment of error, since appellant did not comply with Rule of Court 16(5) requiring him to set out in full the instructions in question.

Appellant challenges the giving of instructions Nos. 3 and 6, both of which apply to alienation of affections. No. 3 correctly instructed the jury as to all the elements of the tort and that appellant's liability depended upon respondent proving, by a preponderance of the evidence, that appellant

was the "procuring or controlling cause" of alienating the wife's affections. No. 6 qualified No. 3 by instructing the jury that one who "aids" in causing alienation of a wife's affections will be liable to her husband.

Appellant did not except to instruction No. 3, but he did except to instruction No. 6 on the ground that it misstates the law as to the liability of one who *aids* in causing alienation of a wife's affection for her husband, in that it fails to include the words "controlling or procuring cause," not adequately covered in other instructions. He makes the different contention on appeal that, considered together, instructions Nos. 3 and 6 are inconsistent and confusing to the jury.

This issue is similar to the problem of causation in negligent torts where the term "proximate cause" is used. In alienation of affections, the actor's course of conduct must have been *a* cause, not necessarily the sole cause, in alienating the wife's affections. Prosser, *op. cit.*, § 101 at p. 920; 3 Restatement of Torts § 683 (i); 42 C. J. S. 321, Husband & Wife § 669, Defendant Not Procuring Cause: Other Causes Contributing, citing many cases; 27 Am. Jur. 129, Husband & Wife, § 526, Necessity That Defendant Bring About Alienation, citing several cases and annotation in 44 Am. St. Rep. 846. Viewed in this light, the instructions were neither inconsistent nor confusing.

■ Appellant challenges the court's refusal to give his requested instruction No. 3, which would have instructed the jury that his improper relations with Charlotte were insufficient *per se* to support the action for alienation of affections, since it must appear that he actually caused the alienation of her affections.

Instructions Nos. 3 and 6 more correctly and adequately instruct the jury on the element of causation in the tort of alienation of affections. There was no error.

Appellant challenges the court's refusal to give two requested instructions. One was to the effect that, before appellant would be liable for alienation, he must have done some act or carried on a course of conduct, and that, if the

wife fell in love with him without any action on his part, he would not be liable. The other was to the effect that if appellant's employer-employee relationship with the wife required constant social and business contact with a resultant growth of her affection for appellant and the consequent alienation of her affections from her husband, that appellant is not liable, even though he realized that the woman was falling in love with him, unless he acted to engender her affection. Again we say that the element of causation was adequately defined in instructions Nos. 3 and 6. It was therefore not error to refuse the requested instructions.

Appellant's seventh assignment of error applies to the action for criminal conversation and is that the court erred in refusing to instruct the jury that the evidence is insufficient if it establishes only the *opportunity* for, and the *possibility* of, sexual intercourse and fails to establish by a preponderance of the evidence that the act *did occur*. The court instructed the jury, among other things, that respondent would have established appellant's liability for criminal conversation if he proved by a preponderance of the evidence that appellant had sexual intercourse with respondent's wife. The instruction correctly stated the law. The requested instruction adds no necessary element. There was no error.

At the conclusion of the trial, appellant's motion for new trial, setting forth all the statutory grounds, was denied. Appellant assigns this as error and sets forth eleven matters the cumulative prejudicial effect of which, he contends, entitled him to a new trial.

The first matter raised by this assignment is whether it was prejudicial for the trial court, on his own motion, but without objection from appellant, to elicit from witness Grant testimony that neither Grant nor appellant was in military service during the war.

██ The record indicates that *appellant* lived continuously in Spokane except for periods he spent at college and in the Federal penitentiary and that, continuously during

the past ten years, he was engaged as a pharmacist in this same neighborhood. No prejudice could have resulted from the witness stating what already must have been obvious.

■ The *witness* testified that he was employed at appellant's pharmacy during the last two years of the war. In any event, it is always proper to establish a witness' background and to place him in his setting by asking him what he is doing and what he has done for a living. *Simonson v. Huff,* 124 Wash. 549, 553, 554, 215 Pac. 49. We think the reason for the rule applies to military service as well as to other occupations.

■ The second occurrence which appellant claims prejudiced him concerns his own cross-examination. It was properly established that he had been convicted of a Federal narcotics act violation. Thereupon respondent asked about the length of his imprisonment.

This was not error. The cross-examiner may ask the nature of the crime and the length of the sentence. *State v. Steele,* 150 Wash. 466, 468-470, 272 Pac. 742; *State v. Lindsey,* 27 Wn. (2d) 186, 177 P. (2d) 387, 181 P. (2d) 830.

■ The third occurrence which, appellant contends, introduced prejudice into the trial was the cross-examination of witness Wheatman about his use of narcotics on appellant's premises.

The gravamen of appellant's argument is that the mere suggestion of narcotics under the circumstances of this case was misconduct of counsel prejudicial to appellant and, like the mention of insurance in negligence actions, entitled him to a new trial.

There is a difference of judicial opinion as to the relevancy of the drug habit or the mere use of narcotics, as in this case, to propensity for veracity. The view of a majority of the courts and the better view, according to Wigmore, is that it *is* relevant. 3 Wigmore, *op. cit.,* § 934.

As to a course of conduct contrasted to specific acts of misconduct, see, also, the rule of *State v. Coella,* 3 Wash. 99, 28 Pac. 28, followed in *State v. Cooper,* 26 Wn. (2d) 405, 418, 174 P. (2d) 545.

■ The fourth occurrence upon which appellant seeks a new trial is a remark by counsel during his argument to the jury. The arguments were not included in the statement of facts and will not be considered.

The other occurrences upon which appellant relies are questions propounded on the cross-examination of appellant and of appellant's witness Hardy. They (1) tended to discredit appellant's brother and (2) raised the question of whether Hardy's mother approved of his going to the pharmacy. Even if error, they are not of a weight sufficient to constitute prejudicial error, entitling appellant to a new trial.

■ Appellant also relies on comments by the court admonishing appellant's witnesses to make their answers responsive to the questions and instructing another witness that the court would determine what questions he must answer. Appellant does not suggest that these remarks were unconstitutional comments on the evidence. The contention seems to be that they prejudiced appellant in the eyes of the jury. We consider the remarks proper and necessary to effective discipline and control of the trial by the court. They were not reversible error.

■ Finally, appellant contends that the verdict was so excessive as unmistakably to indicate passion and prejudice when viewed in the light of all the occurrences set out above. We are not prepared to draw that conclusion from a fifteen-thousand-dollar verdict.

The judgment is affirmed.

SIMPSON, C. J., ROBINSON, HILL, and HAMLEY, JJ., concur.