[No. 683-2.    Division Two.    May 4, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES ROBERT KIMBRIEL, *Appellant.*

860

*William H. Dunn,* for appellant (appointed counsel for appeal).

*C. Brent Nevin, Prosecuting Attorney,* and *Frederick J. Stoker, Chief Deputy,* for respondent.

PEARSON, C.J.—The defendant, James Robert Kimbriel, was tried and convicted by a jury on one count of armed robbery and one count of car theft. He appeals the judgment and sentence, claiming that several evidentiary rulings and jury instructions were in error, preventing him from obtaining a fair trial. We agree that a new trial should be granted.

In the late afternoon of June 23, 1971 several young people commenced gathering for a party at a residence near 9th and Emerson in Portland, Oregon. Among those present were the defendant and three others who became the chief prosecuting witnesses at the trial.

The jury was entitled to believe the version of the events related by Mary Santos and Jon Cathey, both of whom were 18 years of age, and Gary Grundmeyer, age 17—a version disputed by defendant in several respects. That version we will accept as established by the jury's finding of gui't.

Defendant informed the group that he knew where to obtain some marijuana. A collection of $100 was taken to fund the purchase. The money was given to Mary Santos and she departed with defendant and Gary Grundmeyer in a 1959 Hillman automobile borrowed from Jon Cathey. Grundmeyer drove the vehicle and was directed by defendant to proceed to a location in northeast Portland, allegedly so that defendant could locate his brother, who had a supply of marijuana. Defendant left the vehicle at this point,

was absent for approximately 10 minutes, and returned to the car with a man he identified as Charles Kaiser.

Defendant told the two occupants that Kaiser was a friend of his brother and wanted to attend the party. He also told them that his brother's whereabouts were unknown, but that he was probably at his home in Vancouver. After a stop at a pay phone where defendant claimed to have made a fruitless attempt to reach his brother, Grundmeyer was directed to proceed to an isolated area in Clark County, Washington, claimed by defendant to be the place where his brother resided.

Upon their arrival at this area, Kaiser pulled a gun, aimed it at Grundmeyer, and, under the threat of shooting him, extracted the $100 from Mary Santos. At this point, Kaiser ordered the two out of the car, defendant got into the driver's seat and drove away with Kaiser. The car was later recovered by the police in a parking lot in Vancouver, Washington.

At the conclusion of the state's case, defendant took the stand, denied complicity with Kaiser, claimed that he was acting under duress from Kaiser, and that he had no advance knowledge Kaiser planned the robbery and car theft. Defendant also testified on direct examination that in November, 1966, he was convicted of auto theft, that he served 4½ years of a 6-year sentence, and was on parole in June, 1971 at the time the present events took place.

On cross-examination, the following questions were asked by the deputy prosecutor, interspersed by objections from defense counsel:

Q Have you had any other convictions of crimes, Mr. Kimbriel?
A Juvenile offenses, yes.
[Objection.] [Overruled.]

. . .

Q Were you convicted of a similar crime in July of 1969?
A Not that I know of.
Q Under the Dyer Act?
A No.
[Objection.] [Overruled.]

. . .

Q  You're not aware of a crime in July of 1969?
A  My parole was violated in July of 1969.
[Objection.] [Overruled.]

. . .
Q  The basis for that violation of parole  . . .
[Objection.] [Overruled.]

. . .
A  July of 1969?
Q  Yes, what was the basis for that parole violation?
A  I was taken back to Lompoc, [prison] because of extensive use of narcotics.

After ascertaining that the state had no evidence that defendant had suffered any other criminal convictions, the trial court instructed the jury to disregard the testimony relating to the parole revocation and the excessive drug use. No motion for mistrial was made, but the fact that this evidence was brought to the attention of the jury is a principal assignment of error on appeal.

On rebuttal, the state called Charles Kaiser to the witness stand. Kaiser refuted defendant's duress defense and testified that instead of being an innocent victim, defendant had been the chief engineer of both the robbery and the car theft and that the two had equally divided the stolen money.

In attempting to impeach Kaiser, defense counsel established that Kaiser had, prior to trial, been convicted of auto theft arising from this occurrence, and had received a 3-year deferred sentence. Kaiser denied that his testimony was influenced by the probationary sentence. At this point the following occurred:

Q  [By Mr. Dunn]  Were you ever accused of robbery?
Mr. Stoker:  Your Honor, I think that's objectionable.
Mr. Dunn: Well, Your Honor . . .
The Court:  I'm going to sustain the objection.

The refusal to allow this testimony is also assigned as error.[1]

---

[1]Connected with this assignment of error was an offer of proof made by defendant at the commencement of his case and before Charles

Finally, the following colloquy occurred while defense counsel was making his argument to the jury:

Mr. Dunn: I submit that there is a reasonable doubt to say the least, as to whether he's got any reason to come before you and tell you something that is not the truth. There is a reasonable doubt that what Charlie Kaiser said on the stand Wednesday was a pack of lies. He's free at the present time on a deferred sentence from his guilty plea, and subject to the jurisdiction, and under the jurisdiction of this court.

Mr. Stoker: I object to that.

The Court: I will sustain the objection, and the jury will disregard it. The matter of the credibility of Mr. Kaiser is before this jury and not the matter of Mr. Kaiser's disposition of his case.

This refusal to allow defendant to argue the deferred sentence as affecting Kaiser's credibility is also urged as error.

We point out initially that until Kaiser testified, evidence that defendant was a knowledgeable and voluntary participant in the crime was largely circumstantial. It must be remembered that defendant neither handled the gun nor took the money. At the point in the trial when the state rested, defendant's guilt had to be inferred from the fact that he was instrumental in arranging for the marijuana purchase, had picked up Kaiser, directed the victims to the area where the robbery and car theft took place, and drove · the car away afterward. These circumstances, while persuasive of his complicity, were not necessarily conclusive beyond a reasonable doubt, because (1) defendant's brother did, in fact, live in the near vicinity of where the car was stopped; (2) the circumstances were not inconsist-

Kaiser had testified. Defendant offered to prove that Kaiser was a listed prosecutor's witness, that he had pleaded guilty to a crime in connection with this occurrence, and was free on a deferred sentence. In rejecting the offer, the trial court stated: "Disposition of a case has nothing to do with it, Mr. Dunn. Absolutely none."

ent with his claim of duress; and (3) there was other testimony that defendant had not insisted that the money collected be taken along on the trip.

When Kaiser testified, however, the circumstantial evidence had direct corroboration and the respective credibility of Kaiser and defendant became the factor on which the jury might have based its decision of guilt.

In this factual context, we must consider those evidentiary rulings on matters affecting the defendant's credibility and that of his alleged accomplice, to see if the rulings were erroneous, and, if so, whether or not they had the effect of depriving him of a fair trial.

■ We consider first the matter of defendant's parole revocation and the manner in which the deputy prosecutor elicited the fact and grounds for that revocation. It has long been the rule in this state that examination of a defendant with regard to prior convictions is error when the prosecutor is either unwilling or unable to prove the alleged conviction upon the witness' denial. *State v. Beard,* 74 Wn.2d 335, 444 P.2d 651 (1968); *State v. Stevick,* 23 Wn.2d 420, 161 P.2d 181 (1945); *cf. State v. Martz,* 8 Wn. App. 192, 504 P.2d 1174 (1973).

■ Furthermore, a defendant's prior arrest record or other prior acts of misconduct, criminal or otherwise, are not admissible as bearing on the issue of credibility. *State v. Emmanuel,* 42 Wn.2d 1, 253 P.2d 386 (1953); *State v. Lampshire,* 74 Wn.2d 888, 447 P.2d 727 (1968).

The rationale for these rules has been amply covered in *State v. Emmanuel, supra,* and *State v. Beard, supra,* and we need not repeat them here. It is clear from the rules and the rationale that the questions asked by the deputy prosecutor when he sought to establish a Dyer Act violation or similar crime in 1969 violated these rules, and defendant's objection should have been sustained. Also, when defendant answered that his parole was revoked in 1969, it was error for the state to pursue that question when there was no proof available that defendant's parole was revoked because of a criminal conviction. *State v. Beard, supra.* De-

fendant's objection to this question should likewise have been sustained. The only purpose of these questions was to hold the defendant up to ridicule and to discredit him in the minds of the jury. *State v. Lindsey*, 27 Wn.2d 186, 177 P.2d 387 (1947).

The state seeks to justify its actions by referring us to *Lankford v. Tombari*, 35 Wn.2d 412, 213 P.2d 627, 19 A.L.R.2d 462 (1950) where, in a civil action, it was held that evidence of a drug habit or narcotics use is relevant on the question of the witness' credibility. We need not determine the applicability of that rule to a criminal prosecution which is governed by RCW 10.52.030 and the other cases cited above.[2] The state here was able to interject defendant's prior narcotics use by an improper line of questions. In our view, the end should not be allowed to justify the means in a criminal prosecution.

The trial court did act to strike the improper testimony when the state acknowledged that it was not prepared to prove a prior conviction in July, 1969. We doubt if this would cure the prejudicial effect of the disclosure. We need not resolve that question, however, nor the related question of whether defendant should have sought a mistrial, rather than stand on the court's instruction. *State v. Beard, supra.* Since the next assignment of error convinces us that the case must be reversed, we assume that this prejudicial misconduct will not be repeated when the case is tried again.

We turn now to the most significant problem raised on appeal. We think it was prejudicial error for the trial court to deny defendant the right to establish that Charles Kaiser was originally charged with both *robbery* and *auto theft*, that the robbery charge was dismissed, and that Kaiser, a key state rebuttal witness, had been given a deferred sentence on a plea of guilty to a charge of auto theft. It was also error for the trial court to instruct the jury not to

---

[2]We are also mindful of other exceptions to the general rule that a defendant must be tried for the offenses charged in his indictment. *See State v. Whalon*, 1 Wn. App. 785, 464 P.2d 730 (1970).

consider the fact that Kaiser had received a deferred sentence.

The rules pertaining to this question were recently considered in *State v. Wills*, 3 Wn. App. 643, 645, 476 P.2d 711 (1970):

> The rule is that cross-examination of a witness for the purpose of showing bias, prejudice or interest is a matter of right, but the scope or extent of such cross-examination is a matter within the discretion of the trial court. [Citing cases.] The entire case against the defendant was based upon circumstantial evidence. The most damaging testimony was that given by the witness Dobbins. The defendant was entitled to cross-examine Dobbins regarding the circumstances of the dismissal of the charges against him so that the jury could consider and weigh his testimony in its proper perspective. The scope and extent of that cross-examination was within the discretion of the trial court but its refusal to allow any cross-examination into that area constitutes reversible error.

(Footnote omitted.) In *State v. Tate*, 2 Wn. App. 241, 469 P.2d 999 (1970), we indicated that great latitude should be allowed in cross-examining an essential prosecution witness to show the motive for his testimony.

■ We have already stated the importance of Kaiser's testimony. He was the active perpetrator of the robbery. Why he was allowed to plead guilty to the less serious auto theft charge, and why the robbery charge was dismissed were legitimate areas of cross-examination going to his motive for testifying for the state. Likewise, the deferred sentence given Kaiser also could have influenced his testimony, whether or not any promises were made to him. A light sentence given to an accomplice may on the one hand be fully justified by his background. On the other hand, subtle pressures are present at the time the plea arrangement is made, even though no promises have been made by the state. *State v. Tate, supra.*

It should, we think, be the right of the defendant to develop these matters on cross-examination and the jury should be entitled to consider them as affecting the witness' credibility. The state contends that the question by which

defendant sought to develop this testimony was overbroad. We agree that normally it is improper for defense counsel to inquire generally into the witness' prior arrest record. However, defense counsel had previously made a detailed offer of proof. His question—"Were you ever accused of robbery?"—would not have been easily misunderstood by either the witness or by the court. He had, in fact, been charged with robbery arising from the incident on trial, and that charge was dismissed. These facts, together with the fact of a deferred sentence, were matters which defendant had the right to bring before the jury as affecting Kaiser's credibility.

On retrial, we want to make it clear that it is improper for defendant to state or imply that the prosecutor in recommending or the court in granting a deferred sentence to Kaiser, did so to induce Kaiser to testify against defendant. Kaiser's motives and no others are at issue.

We have considered defendant's other assignments of error and find them to be groundless.

Judgment reversed and remanded for a new trial.

PETRIE and ARMSTRONG, JJ., concur.

Petition for rehearing denied June 14, 1973.

Review denied by Supreme Court August 27, 1973.