[No. 2320–2.   Division Two.   June 15, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. PEARLIE MAE DIXON, *Appellant.*

*George W. Dixon,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

REED, J.—Defendant Pearlie Mae Dixon's Pierce County Superior Court conviction of second–degree murder must be reversed because the prosecuting attorney persisted in asking if she had previously been convicted of prostitution when in fact, that conviction had been reversed.

On September 26, 1975, defendant shot and killed her husband. At trial defendant contended she had acted in self–defense. The State's case rested primarily on the testimony of an investigating officer that her statements on the night of the slaying were inconsistent with her claim of self–defense. In short, the issue of guilt revolved around whether the jury believed defendant or the officer.

During cross–examination, after defendant denied she had previously been convicted of any crime, the prosecuting attorney asked if it was not true she had been convicted in 1964 in Tacoma Municipal Court of soliciting and practicing prostitution. When defendant continued to deny any conviction, the prosecuting attorney confronted her with a police department "I & R report" and asked defendant, "Does this look like what happened in this case now that you have looked at this?" Defendant responded, "I guess so," whereupon the prosecuting attorney offered the document in evidence.

During recess the trial judge, sensing a problem because of the method used to discredit defendant, took it upon himself to check the superior court records and found the municipal court conviction had been appealed. The superior court files showed that in 1967 the city was granted an order dismissing the appeal because its witnesses were

unavailable. Although the order of dismissal recited the reasons therefor, its specific terms did not reverse or vacate the judgment of the lower court. Nevertheless the trial court correctly ruled its effect was to vitiate the conviction, a fact conceded by the State on appeal.

■ After extended colloquy with counsel, the trial court attempted to cure the error thus committed by permitting the entire superior court file to go to the jury and by instructing the jury as follows:

INSTRUCTION NO. 8A

You are instructed that the ultimate result of the 1964 prosecution of the defendant was a dismissal. As a matter of law, there is no conviction.

In the circumstances of this case we do not think the corrective measures taken by the trial court were adequate to dispel the prejudice against the defendant which this evidence tended to create in the minds of the jury. The actions of the State effectively denied defendant the fair trial guaranteed by article 1, section 22 of the Washington State Constitution. When the defendant in a criminal case takes the stand in his own behalf he subjects himself, as does any witness, to impeachment by proof of his prior convictions. *State v. Harrison,* 72 Wn.2d 737, 435 P.2d 547 (1967). A conviction that has been reversed prior to trial on the current charge, however, is no conviction at all, and cannot be used to discredit a defendant. *State v. Murray,* 86 Wn.2d 165, 543 P.2d 332 (1975); *State v. Hill,* 83 Wn.2d 558, 520 P.2d 618 (1974). It is improper for the State, after a defendant has denied a conviction, to attempt impeachment in this manner unless it is prepared to prove the existence of a *valid* conviction. *State v. Beard,* 74 Wn.2d 335, 444 P.2d 651 (1968); *State v. Martz,* 8 Wn. App. 192, 504 P.2d 1174 (1973); *State v. Kimbriel,* 8 Wn. App. 859, 510 P.2d 255 (1973). When the State fails to abide by the rules governing the use of convictions to impeach, the resulting error requires reversal if the prosecuting attorney's actions are so flagrant, persistent, ill–intentioned or

prejudicial as to deny the defendant a fair trial. *State v. Beard, supra.*

In the instant case, when the prosecuting attorney elicited an outright denial from defendant in response to his first question, he was placed on notice that continued denials would force him to produce a properly documented conviction. If he had stopped there it is possible any prejudicial effect from the mere asking of the question and its denial could have been cured by striking the question and instructing the jury that the question was improper and there was in fact no such conviction. Instead, however, even after defendant's counsel offered to stipulate if the State had proper proof, the prosecuting attorney produced, not a certified copy of a valid conviction, but a police department "I & R report." This report evidently did not show the 1967 superior court reversal. Defendant's answers gave obvious and ample warning to the prosecuting attorney that the police record was suspect at least and that he had best verify its authenticity. As stated in *State v. Stevick,* 23 Wn.2d 420, 425, 161 P.2d 181 (1945):

> In this day in which criminal records are quite complete and available to all prosecuting officials, there is no excuse for asking questions concerning former convictions at random.

The prosecuting attorney chose to ignore the flag of warning, however, and insisted the defendant confirm the information shown in the police report, which was correct as far as it went. Even after the superior court records were obtained the prosecuting attorney continued to argue there was a conviction and proposed to the court that it give the stock jury instruction on the effect of a conviction on credibility. The proffered instruction was not given but this may have merely compounded the error because the court never told the jury of the limited use to which such evidence may be put.[1] Despite the special instruction No. 8A, the jury

---

[1] The dilemma immediately arises because, on the one hand the court had in front of it a conviction that had been reversed and yet was no conviction, rendering the instruction incorrect; on the other hand the jury had heard evidence of a

had before it proof of a municipal court conviction and the superior court's order dismissing the appeal for a reason which the ordinary juror could well have believed was a "legal technicality." Nothing that was done thereafter to rectify the error could possibly restore defendant to the same position she occupied before the fatal question was asked. The net result was to place before the jury evidence of misconduct and ill repute which could only result in holding the defendant up to ridicule and discrediting her in the minds of the jury. *State v. Kimbriel, supra; State v. Lindsey,* 27 Wn.2d 186, 177 P.2d 387 (1947).

■ Although it is presumed that juries follow the court's instructions, when the improperly admitted evidence is inherently prejudicial, a subsequent withdrawal of that evidence, coupled with an instruction to disregard it, cannot logically be said to remove the prejudicial impression created. *State v. Suleski,* 67 Wn.2d 45, 406 P.2d 613 (1965); *State v. Kimbriel, supra.* Unlike the situation in *State v. Beard, supra,* we cannot find, after a careful review of the record before us, that defendant received a fair and impartial trial despite the error, *i.e.,* we cannot say the error did not affect or presumptively affect the final result of the trial. *State v. Martin,* 73 Wn.2d 616, 627, 440 P.2d 429 (1968). On the contrary, defendant attempted to justify or excuse her homicidal act by showing the victim had been drinking, that he was threatening and abusive when under the influence of intoxicants, that he had previously assaulted defendant, and that he was assaulting her with a jack handle at the time she fired her gun blindly in self-defense. There were no eyewitnesses to the shooting and the State in the main relied upon the version of the incident which defendant gave to the investigating officer that night. Credibility thus became the central and determinative issue in the trial. Proof of a nonexistent conviction bore strongly on this issue and we can only assume the

conviction which was inadmissible except to impeach. We make no judgment as to whether a court-devised instruction couched in terms of what the State attempted to do and why it was not proper, would have solved the question.

defendant was prejudiced by such evidence. That prejudice was such that it could be erased only by granting a mistrial, on the court's own motion, if necessary, and awarding a new trial before an untainted jury.

Defendant's conviction of second–degree murder is reversed and the cause remanded for a new trial.[2]

PETRIE, C.J., and PEARSON, J., concur.

Petitions for rehearing denied July 14, 1977.

Review denied by Supreme Court December 16, 1977.

---

[2]We note the jury was given a second–degree murder presumption instruction, but no exception was taken. Such an instruction has now been held constitutionally infirm. *State v. Colwash,* 88 Wn.2d 468, 564 P.2d 781 (1977); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977). We trust the court will not so instruct upon a retrial of this matter.