# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

        v.

WESLEY BURGESS YOUNG,

                Appellant.

DIVISION ONE

No. 80907-5-I

UNPUBLISHED OPINION

DWYER, J. — Wesley Young appeals from the judgment entered on a jury's verdicts finding him guilty of malicious harassment and assault in the third degree. He contends that (1) the admission of a jail telephone call recording violated his equal protection rights, (2) he was denied effective assistance of counsel with regard to self-defense jury instructions, and (3) the jury instruction defining "true threat" was constitutionally insufficient. Because he has not shown any entitlement to relief, we affirm.

I

Wesley Young, who is white, was riding a crowded Sound Transit train with his backpack on the seat next to him around 9:00 a.m. on March 21, 2019. Michelle Jennings, an African-American woman, boarded the train and asked Young to move his backpack so she could sit down. Young stated that he did not

want "no [n word]"[1] sitting next to him.  Jennings again asked him to move the bag.  Young told Jennings that if she tried to sit down, he would pepper spray her, and put his hand in his pocket.  Jennings began to move away.  Young yelled after her using racial slurs, stating that he was "sick and tired of these [n word]s" and calling Jennings a "bald-headed [n word]."

An African-American high school student, Alonzo Boyles, overheard this interaction.  Boyles heard Young yelling racial slurs at Jennings, and approached Young.  Boyles told Young that Young "shouldn't be talking to [Jennings] like that."  Young responded by pepper spraying Boyles.  Young then hit the emergency stop button, "pried open the doors," and exited the train between stops.

The incident was recorded by the train's surveillance video.  Additionally, another passenger, Victoria Gardner, made a video recording on her cell phone.

Young was in custody on another matter when he was identified as the suspect by a detective with the King County Sheriff's Office.  He was eventually charged with malicious harassment and assault in the third degree.  At his bail

---

[1] Harvard Law Professor Randall Kennedy has summarized the significance of this particular racial epithet as follows:

> It is a profoundly hurtful racial slur meant to stigmatize African Americans; on occasion, it also has been used against members of other racial or ethnic groups, including Chinese, other Asians, East Indians, Arabs and darker-skinned people.  It has been an important feature of many of the worst episodes of bigotry in American history.  It has accompanied innumerable lynchings, beatings, acts of arson, and other racially motivated attacks upon blacks.  It has also been featured in countless jokes and cartoons that both reflect and encourage the disparagement of blacks.  It is the signature phrase of racial prejudice.

Randall Kennedy, A Note on the Word "Nigger," HARPWEEK, http://blackhistory.harpweek.com/1Introduction/RandallKennedyEssay.htm [https://perma.cc/3JH9-CZQ4]

hearing on this matter, Young stated that he had stable employment and earned $4,000 a month but, with child support obligations, had "no means right now to make any kind of bail." The trial court determined that given the nature of the offense and Young's criminal history—which included "at least 20 warrants since 2014"—bail would be set at $25,000. Young did not post bail and remained in custody.

Young made a telephone call to his sister from jail, and uttered these remarks:

> He said he was going to smash my face. Some lady told me to move my backpack and then I told her there are other seats available and she came back and was like being a bitch and then I told her, and I told her, I said, "Fuck you [n word]. Fuck you, [n word] bitch." And then this other guy came up and was like, "I'm going to smash your face." So I pepper-sprayed his ass and then I hit e-stop on the light rail and jumped off, right?

The call was recorded. Consistent with the requirements of the Washington privacy act, chapter 9.73 RCW, the beginning of the call announced that the call was subject to monitoring and recording. Over his objection, the recording was admitted at trial.

With respect to the assault charge, the parties agreed that the jury should be instructed on the lawful use of force in self-defense and that the jury should be instructed that a "first aggressor" cannot claim self-defense. The jury was not instructed that a person has no duty to retreat when threatened in a place he has a right to be, nor did either party request such an instruction.

Young was convicted on both counts. He now appeals.

3

II

Young contends that by admitting a recorded jail call, the trial court violated article I, section 12 of the Washington Constitution and the equal protection clause of the Fourteenth Amendment. He asserts that the admission of the recording treated him differently than a wealthier defendant, who could afford to pay bail and be released pretrial, and whose pretrial calls would accordingly not be recorded and admitted at trial.

A

As an initial matter, Washington's privacy act, chapter 9.73 RCW, is not violated by the recording and admission of jail telephone calls. State v. Modica, 164 Wn.2d 83, 90, 186 P.3d 1062 (2008). We have also previously determined that the King County Correctional Facility's policy of recording telephone calls, as compared to the policies in place in the Department of Corrections' facilities, does not violate equal protection guarantees. State v. Haq, 166 Wn. App. 221, 254-55, 268 P.3d 997 (2012).

Young does not challenge the recording statute, or the jail's practice of recording calls but, rather, only the trial court's decision to admit the recording. Relying on State v. Juarez DeLeon, 185 Wn.2d 478, 374 P.3d 95 (2016), Young contends that the lawfulness of recording the call does not indicate that the admission of the recorded call at trial is constitutional. However, Juarez DeLeon is inapposite.

In Juarez DeLeon, our Supreme Court determined that when jail staff ask suspects about their gang affiliations upon booking (so as not to house rival gang

members together for safety reasons) no constitutional violation occurs. But the court further determined that admitting the resulting statements against defendants at trial did violate the Fifth Amendment protection against self-incrimination, because the statements could not be considered voluntary. Juarez DeLeon, 185 Wn.2d at 487. Thus, the admission of compelled statements at trial violated the defendants' Fifth Amendment rights, although the compulsion of the statements for safety reasons did not. Juarez DeLeon, 185 Wn.2d at 487. Here, Young's speech recorded on the call to his sister was not compelled. Juarez DeLeon does not apply.

Nevertheless, we review his claims of constitutional violations.

B

Young asserts that the admission of the recording violated the state constitution's privilege and immunities clause because such admission "grants a special privilege to non-indigent defendants, whose personal conversations are not monitored by the government (absent a warrant) and not introduced against them at trial." Because the trial court's decision to admit the recording does not grant either a privilege or an immunity, we disagree.

Our state constitution provides that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." CONST. art., I § 12. The purpose of article I, section 12 is to "prevent favoritism and special treatment for a few, to the disadvantage of others." Ockletree v. Franciscan Health Sys., 179 Wn.2d 769, 776, 317 P.3d

5

1009 (2014). Although we often construe article I, section 12 in a manner consistent with the federal equal protection clause, whether a law implicates a "privilege or immunity," requires an independent analysis. Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc., 196 Wn.2d 506, 518-19, 475 P.3d 164 (2020). A "privilege" or "immunity" for the purposes of our state constitution are benefits that implicate fundamental rights of citizenship. Martinez-Cuevas, 196 Wn.2d at 519.

Here, the admission of a legally recorded telephone call is not a law, nor does it grant any privilege or immunity to any person or class of persons. The admission of the telephone recording in his case has no impact whatsoever on any other defendants. Accordingly, Young's assertion to the contrary fails.

C

Young also contends that the admission of the recording violates the equal protection clauses of both article I, section 12 and the Fourteenth Amendment. Specifically, he asserts that the trial court violated his right to equal protection under the law by admitting a recording of a personal telephone call, when "such recordings may not be introduced against defendants with money." We disagree. Because any similar recordings that exist may be introduced against any defendant, regardless of wealth, Young fails to establish a violation of his equal protection rights.

To show a violation of his equal protection rights, Young must establish that he received disparate treatment because of membership in a class of similarly situated individuals and that the disparate treatment was the result of

intentional or purposeful discrimination. State v. Osman, 157 Wn.2d 474, 484, 139 P.3d 334 (2006). Accordingly, Young must first establish that he was treated differently from others who were similarly situated. Osman, 157 Wn.2d at 485. He fails to do so.

Young concedes that some indigent defendants are released pretrial and that some wealthy defendants are not. He contends that, nevertheless, he was not able to pay bail when a wealthier person in his position could have, and thereby avoided having his personal telephone conversations recorded and admitted at trial. However, Young himself could have avoided this scenario, regardless of his wealth and his pretrial detention. He had simply to choose not to have a personal conversation on a telephone after he was warned that the call was subject to recording.

Even if we accept Young's contention that he remained in custody pretrial because he is indigent,[2] defendants who are similarly situated for the purposes of equal protection analysis are those who, like Young, have made incriminating statements on legally recorded telephone calls of which the State has been made aware. Young sets forth no reason to believe that any defendant under these circumstances would not be subject to admission of the recording at trial.

Certainly, defendants who are in jail awaiting trial are subject to greater surveillance than those who are not, and it surely is so that some people who remain in custody do so because they cannot afford to post bail. But the

---

[2] The record includes evidence that Young was employed, that he made $4,000 a month when bail was set, that the Department of Public Defense determined that Young was indigent, and that Young was in custody on another matter when this cause was filed. It is not altogether clear from this evidence precisely why Young remained in jail awaiting trial.

fundamental fairness of a system which allows people to "lose the right to liberty simply because that person can't afford to post bail,"[3] is not here at issue. We need not address the wisdom of bail in general to conclude that the admission of Young's recorded telephone call did not violate his equal protection rights.

III

Young next contends that his attorney's decisions regarding self-defense jury instructions on the assault charge constituted constitutionally ineffective assistance of counsel. We disagree.

In order to succeed on an ineffective assistance of counsel claim, the defendant must show that (1) the attorney's performance was deficient and (2) the defendant was prejudiced by that deficient performance. In re Det. of Hatfield, 191 Wn. App. 378, 401, 362 P.3d 997 (2015) (quoting State v. Borsheim, 140 Wn. App. 357, 376, 165 P.3d 417 (2007)). "Deficient performance is that which falls below an objective standard of reasonableness." State v. Weaville, 162 Wn. App. 801, 823, 256 P.3d 426 (2011). "Prejudice occurs where there is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different." Weaville, 162 Wn. App. at 823 (citing State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)). We presume adequate representation when there is any "'conceivable legitimate tactic'" that explains counsel's performance. Hatfield, 191 Wn. App. at 402 (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

---

[3] In re Humphrey, No. S247278, slip. op. at 2 (Cal. Mar. 25, 2021) https://www.courts.ca.gov/opinions/documents/S247278.pdf (unconstitutional to detain individuals pretrial because they cannot pay bail).

A

Young asserts that his counsel provided ineffective assistance by failing to object to the trial court's issuance of a first aggressor instruction. Because the evidence presented at trial supported such an instruction, Young's contention fails.

An aggressor instruction may be given when it is "called for by the evidence." State v. Riley, 137 Wn.2d 904, 910 n.2, 976 P.2d 624 (1999). To determine whether the evidence adduced at trial was sufficient to support giving a particular jury instruction, we view the supporting evidence in the light most favorable to the party that requested the instruction. State v. Grott, 195 Wn.2d 256, 270, 458 P.3d 750 (2020) (quoting State v. Wingate, 155 Wn.2d 817, 823 n.1, 122 P.3d 908 (2005)).

The use of force is lawful and justified when a person has a "subjective, reasonable belief of imminent harm from the victim." State v. LeFaber, 128 Wn.2d 896, 899, 913 P.2d 369 (1996), abrogated on other grounds by State v. O'Hara, 167 Wn.2d 91, 217 P.3d 756 (2009). When a defendant meets the initial burden of producing some evidence suggesting that his or her actions amounted to self-defense, the State assumes the burden of proving the absence of self-defense beyond a reasonable doubt. State v. Acosta, 101 Wn.2d 612, 616, 683 P.2d 1069 (1984). First aggressor instructions are used to explain to the jury one way in which the State may meet its burden: by proving beyond a reasonable doubt that the defendant provoked the need to act in self-defense. Grott, 195 Wn.2d at 268-69.

"[T]he right of self-defense cannot be successfully invoked by an aggressor or one who provokes an altercation." Grott, 195 Wn.2d at 266 (quoting Riley, 137 Wn.2d at 909). This is because a claim of self-defense is only available against lawful force. Grott, 195 Wn.2d at 266 (quoting 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 5.7(e), at 657-58 (1986)). The use of force is lawful "[w]henever used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person, or a malicious trespass, or other malicious interference with real or personal property lawfully in his or her possession, in case the force is not more than is necessary." RCW 9A.16.020(3).

In cases in which the defendant undisputedly engaged in a single aggressive act, and that act was the sole basis for the charged offense, a first aggressor instruction is inappropriate. Grott, 195 Wn.2d at 272. "One cannot simultaneously engage in an act of first aggression and an act of lawful self-defense because an act of first aggression is an 'intentional act reasonably likely to provoke a belligerent response' *by* the victim, while lawful self-defense requires a 'subjective, reasonable belief of imminent harm *from* the victim.'" Grott, 195 Wn.2d at 272 (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.04, at 256 (4th ed. 2016)). However, when the defendant engaged in a course of aggressive conduct, rather than a single aggressive act, a first aggressor instruction may be justified. Grott, 195 Wn.2d at 271. The provoking act cannot be directed at one other than the

actual victim, unless the act was likely to provoke a belligerent response from the actual victim. State v. Kidd, 57 Wn. App. 95, 100, 786 P.2d 847 (1990).

Here, Young's aggressive course of conduct began when he threatened Jennings, which caused Boyles to approach him. Citing State v. Wasson, 54 Wn. App. 156, 159, 772 P.2d 1039 (1989), Young contends that, as the provoking act was directed at someone other than the victim of the assault (Boyles), a first aggressor instruction was improper. However, a jury could reasonably conclude that Young's conduct toward Jennings constituted a requisite provoking act. It is hardly surprising that Young's actions—loudly threatening an African-American woman while repeatedly using a pernicious racial slur on a crowded train—was likely to provoke a response from a bystander, such as Boyles. See Kidd, 57 Wn. App. at 100 (first aggressor instruction was appropriate for assault on police officers when provoking act was assault of others followed by flight because assaulting individuals and fleeing is likely to result in an armed police response). Accordingly, the evidence at trial was sufficient to support the court's issuance of a first aggressor instruction.

In terms of his ineffective assistance of counsel claim, Young cannot show prejudice because the first aggressor instruction was supported by the evidence presented at trial. Thus, any objection interposed by counsel would have been properly overruled. Grott, 195 Wn.2d at 272. Accordingly, Young does not demonstrate that his counsel provided constitutionally ineffective assistance.

B

Young also asserts that his counsel provided ineffective assistance by failing to request a "no-duty-to-retreat" instruction.  We disagree.

Because of Young's physical position during his assault of Boyles—seated on a crowded train while Boyles stood facing him—he could not have retreated.  Indeed, in requesting a self-defense instruction, counsel described Young as "in a defensive position up on his chair."  The State never argued that Young had a duty to retreat but, instead, asserted that Boyles' behavior did not necessitate self-defense.  Under these circumstances, a "no-duty-to-retreat" instruction would have been superfluous and potentially confusing to the jury.  See State v. Frazier, 55 Wn. App. 204, 208, 777 P.2d 27 (1989).  Accordingly, defense counsel's decision not to request the instruction was neither below the standard of care (because the evidence did not warrant the instruction) nor prejudicial (it is not established that the court would have given the instruction, if requested).  Young's claim fails.

IV

Young next contends that the jury instruction defining "threat" was inconsistent with the requirements of the First Amendment.  Because the alleged error is not properly preserved for appeal, appellate relief is not warranted.

Young's counsel proposed the instruction he now asserts is improper.  The instruction included the following language regarding the mental state of a person making a threat:

> To be a threat, a statement or act must occur in a context or
> under such circumstances where a reasonable person, in the

12

position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.

Jury Instruction 11.

First, this claim of error is barred.  Because defense counsel proposed the instruction, any error constitutes invited error.  Even a constitutional error can be barred by the invited error doctrine.  State v. Heddrick, 166 Wn.2d 898, 909, 215 P.3d 201 (2009).

Second, Young cannot avoid the invited error bar by claiming ineffective assistance of counsel.  The instruction offered by defense counsel and issued by the trial court was consistent with our Supreme Court's decision in State v. Trey M., 186 Wn.2d 884, 893, 900, 383 P.3d 474 (2016).  Thus, two principles control: (1) a lawyer does not act below the standard of care by proposing an instruction that accords with applicable legal authority, State v. Studd, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999), and (2) a lawyer does not act below the standard of care by declining to advance a novel legal argument.  Maryland v. Kulbicki, 577 U.S. 1, 4-5, 136 S. Ct. 2 (2015).  Both principles apply here.

Thus, the claim of error is not properly presented in this appeal.

Affirmed.

_____ Dwyer, J.

WE CONCUR:

_____ Brennan, J.    _____ Andrus, A.C.J.