**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 0 5 2016

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on May 5, 2016

Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 91185-1 |
| | ) | |
| v. | ) | |
| | ) | En Banc |
| RICARDO JUAREZ DELEON, ANTHONY | ) | |
| DELEON, and OCTAVIO ROBLEDO, | ) | |
| | ) | |
| Petitioners. | ) | |
| | ) | Filed   MAY 0 5 2016 |
| | ) | |
| | ) | |

OWENS, J. — The Fifth Amendment provides that a defendant shall not "be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Accordingly, voluntary statements made by a criminal defendant can be admitted at trial but compelled statements cannot. In this case, defendants were forced to choose between making incriminating statements and facing physical violence. Those incriminating statements were then used against the defendants at trial. Under these circumstances, we do not see how the statements could possibly be considered voluntary and admissible. One should not have to risk physical violence to assert a

constitutional right. Based on this Fifth Amendment violation, we reverse these convictions. Defendants are entitled to a new trial.

FACTS

Ignacio Cardenas was outside his home in Sunnyside with his cousin and a friend around 11:00 p.m. waiting for another friend, Jose Barajas. They saw a silver Ford Taurus drove by. Thinking that the car belonged to a friend, Cardenas's cousin flashed a sign associated with their gang at the car. The car did not belong to a friend, and after driving by, it made a U-turn and drove by the house again. Several shots were then fired from the car, hitting Cardenas. He survived, but lost one of his kidneys.

The friend, Barajas, saw the shooting as he drove up to Cardenas's house, and he began following the Taurus. He lost sight of the car, but then caught sight of a car that he believed to be the same silver Taurus. He continued following the car and notified the police that he was following the car that had been involved in the shooting. The police caught up and began chasing the Taurus as well. At one point an officer following the Taurus saw an object fly past his car window that he thought might be a gun; another officer indicated that he saw it fly from the window of the silver Taurus. The police eventually put out spike strips and were able to stop the Taurus. Some officers then returned to search the area where the officers observed the object being thrown from the Taurus, but they did not find anything.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Anthony DeLeon was in the driver's seat of the Taurus. His brother Ricardo DeLeon was in the backseat, and their friend Octavio Robledo was in the front passenger seat. In the car, police found two red bandanas, cans of beer, and marijuana paraphernalia, but no guns or shell casings. The three were arrested and each charged with three counts of first degree assault while armed with a firearm with an intent to benefit a criminal street gang.[1]

The three were tried together as codefendants. The State's theory of the case was that the shooting was gang related. The victim, Cardenas, is a member of the Little Valley Locos/Locotes gang, which is affiliated with the larger Sureño gang. Sureño-affiliated gangs generally wear blue, and they are rivals of the Norteño-affiliated gangs, who generally wear red. The State argued that the three defendants were affiliated with a Norteño-affiliated gang, and that the shooting was a gang-related act of retaliation.

Prior to trial, the judge ruled that he would allow a gang expert to testify regarding gangs and how they operate in general (as opposed to evidence specific to this case) because it was relevant to motive, but repeatedly indicated that it should be narrow and focused. At trial, Officer Jose Ortiz (who also testified as a fact witness regarding his investigation into this particular shooting) gave extensive testimony as a

---

[1] Anthony DeLeon, the driver, was also charged with and convicted of attempting to elude a pursuing police vehicle. He did not challenge that conviction on appeal.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

gang expert. Defendants argue that much of his gang expert testimony was irrelevant and prejudicial. Therefore, we review his testimony in considerable detail.

In his capacity as a gang expert, Officer Ortiz testified that gangs "definitely" have a unique culture with their own language, habits, trends, customs, values, and morals. 12 CD Proceedings (CDP) (Oct. 18, 2010) at 1917. He described their hand signs as "basically a form of American Sign Language." *Id.* at 1922. He explained that gang members must "put[] in work," which can include "burglaries, vehicle prowls, go[ing] out there mobbing, cruising around, flying your colors, throwing out gang signs, intimidating, causing assaults." *Id.* at 1922-23. He testified that if a gang member did not "put[] in work," the gang hierarchy will "order[] a hit on [them]" and "beat [them] down." *Id.* at 1927. He explained that in order to join a gang, one must be "jumped in," which is essentially a "beat down." *Id.* at 1923. Officer Ortiz testified that the leader of the gang "call[s] the shots" from prison and that had "always been the structure." *Id.* at 1927, 1929. He also explained that gang members get "certain credibility" and "certain influence" from serving time in prison. *Id.* at 1929. He went on to say that "[t]hey do some really, really bad crimes out there, whether they get caught or not." *Id.* at 1930. But he also said that gang members did not necessarily have to serve prison time to get credibility, and that one could "establish your reputation by your actions out here on the street." *Id.* He went on to say that the top priority for gang members is to "gain respect," which is accomplished

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

by "going out there doing the assaults, the burglaries, the robberies, the intimidations, the threats, the harassments." *Id.* at 1931-32. He testified that "for them, they equate fear with respect." *Id.* at 1932. He explained that a response to disrespect would include anything from "immediately posturing" and "fighting right on the spot" to "shootings and homicides." *Id.* at 1933. He also stated that gangs now use the Internet to recruit new members and to intimidate and harass rivals. *Id.* at 1939-40.

Immediately after Officer Ortiz's testimony, the defense attorneys moved for a mistrial, arguing that the breadth of his testimony crossed the line as it included evidence that was both irrelevant and prejudicial. In particular, they noted that nothing in this case had anything to do with joining a gang, or any imprisoned leader ordering a shooting. The trial judge denied the motion, opining that any prejudice was "created by them" (referring to the defendants) and that the evidence was "appropriate to the case." 13 CDP (Oct. 20, 2010) at 1998.

The trial judge also allowed the prosecution to present statements made by the three defendants during the jail booking process. Corrections Corporal Gabino Saenz of the Sunnyside jail testified that he is tasked with determining where to safely house new inmates. Many factors go into this determination, including whether someone might be targeted for violence because of age, gang involvement, or mental illness. As part of the booking process, a corrections officer fills out a "Gang Documentation Form" if an inmate indicates that there is someone that they cannot be safely housed

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

with. 7 CDP (Oct. 8, 2010) at 1139, 1167. Importantly, the form is filled out *only* if the individual cannot be safely housed with someone else.

In the Sunnyside jail, the primary groups that have to be housed separately are Norteños and Sureños. When going through the process, Ricardo DeLeon indicated that he was affiliated with a Norteño gang but that he was not active. Anthony DeLeon and Octavio Robledo both indicated affiliation with a Norteño gang. All three indicated they could not be safely housed with Sureños. The defense attorneys objected to admission of these defendants' statements regarding gang affiliation gathered through this process, but the trial judge allowed it.

The trial court convicted each of the three defendants of three counts of first degree assault. The jury found that each crime was committed while the defendant was armed with a firearm, and that each crime was committed with an intent to benefit a criminal street gang. Anthony DeLeon was given an exceptional sentence of 1,002 months, and Ricardo DeLeon and Octavio Robledo were each given an exceptional sentence of 639 months.

All three defendants appealed, raising a number of issues. *State v. DeLeon*, 185 Wn. App. 171, 341 P.3d 315 (2014), *review granted*, 184 Wn.2d 1017 (2015). The Court of Appeals largely rejected their claims, but found that the trial court had erred in two ways. First, the Court of Appeals found that some of the generalized gang evidence that the trial judge allowed was irrelevant, "had little or no probative value,"

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and was not appropriately limited. *Id.* at 196. The Court of Appeals expressed concern with the court's admission of generalized gang evidence and "remind[ed] trial courts that ER 403 has particular importance in assessing the admissibility of generalized evidence regarding the behavior of gangs and gang members." *Id.* at 197. However, the Court of Appeals ultimately concluded that the additional generalized gang evidence was unlikely to have materially affected the outcome of the trial, and upheld all three convictions. *Id.*

Second, the Court of Appeals found that the trial court erred when it ruled that the defendants' statements on the jail intake forms regarding gang affiliation were voluntary for purposes of the Fifth Amendment. *Id.* at 204-05. The Court of Appeals explained that "the State's own trial evidence demonstrated that there was a real and ongoing danger of violence and retaliation between rival gangs that presented these defendants with a credible threat of harm if housed with rival gang members in the Sunnyside jail." *Id.* at 204. As a result, the statements were made by the defendants to avoid a very real risk of danger, and thus were not made voluntarily. *Id.* at 204-05. However, the Court of Appeals found that the error was harmless as to two of the defendants (Anthony DeLeon and Robledo) because of other admissible evidence of their gang affiliation, and upheld their gang aggravators. *Id.* at 205. Because of the scant evidence of Ricardo DeLeon's gang involvement, the Court of Appeals reversed

*State v. DeLeon*
No. 91185-1

his gang aggravator and remanded for a new trial on the aggravator and resentencing. *Id.* at 206, 219.

All three defendants and the State petitioned for review on a number of issues, but we granted the defendants' petitions "only on the issues of excessive street gang and booking forms evidence related to their convictions and sentences" and the State's petition "only as to the street gang aggravator issue." Order Granting Review, *State v. DeLeon*, No. 91185-1 (Wash. Nov. 9, 2015).

## ISSUES

1.  Did the admission of gang information from the defendants' jail booking forms, gathered for the purposes of inmate safety, violate their Fifth Amendment right not to incriminate themselves? If so, was it harmless error?

2.  Was some of the gang expert testimony regarding gang culture and behavior irrelevant, and thus improperly admitted?

## ANALYSIS

*1. The gang information from the jail intake forms was not gathered voluntarily, and thus should not have been admitted as evidence*

The Fifth Amendment provides that a defendant shall not "be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. When determining whether a self-incriminating statement was compelled or made voluntarily, courts look to the totality of the circumstances. *State v. Unga*, 165 Wn.2d 95, 100-01, 196 P.3d 645 (2008). The United States Supreme Court has explained

8

that when a defendant's self-incriminating statements are made in exchange for protection from credible threats of violence while incarcerated, the statements are coerced and involuntary for purposes of the Fifth Amendment. *Arizona v. Fulminante*, 499 U.S. 279, 287-88, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). In that case, the defendant faced a credible threat of violence from other inmates because they suspected him of killing a young girl. *Id.* at 283, 286-87. An informer offered to protect him from that violence if he admitted to the informer that he killed the girl. *Id.* at 283, 286. The United States Supreme Court held that because the subsequent confession was made to avoid a credible threat of violence, it was coerced and involuntary. *Id.* at 287-88.

In this case, the defendants answered questions from jail staff regarding their past or current gang affiliation as part of the jail booking process. As explained above, jail staff ask these questions so they can provide safe housing for jail inmates and protect them from the violence that often occurs when people affiliated with rival gangs are housed together. The form is filled out only if the person indicates that there is someone he/she cannot be safely housed with.

As explained by the Court of Appeals, "The totality of circumstances would lead an inmate being booked into the Sunnyside jail to believe that in order to avoid a real risk of danger posed by being housed with rival gang members, he would need to answer yes when asked if there were certain individuals or groups he could not be

housed with, and then provide the information for the Gang Documentation Form." *DeLeon*, 185 Wn. App. at 204. We agree. The jail staff explained that there is a very real risk of violence, which is the very reason that jail staff ask new inmates these questions. We do not see how statements made under these circumstances could be considered voluntary. The admission of these statements was a violation of the defendants' Fifth Amendment rights.

We wish to emphasize that *asking* these questions was not a constitutional violation. Indeed, jail staff may be required to ask these questions in order to meet their constitutional duty "'to protect prisoners from violence at the hands of other prisoners.'" *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). The constitutional violation occurred when the State then used the statements gathered under these circumstances against the defendants at their trial.

We apply a harmless error standard to constitutional errors such as this. *See, e.g., State v. Monday*, 171 Wn.2d 667, 680, 257 P.3d 551 (2011). "Under that standard, we will vacate a conviction unless it necessarily appears, beyond a reasonable doubt, that the misconduct did not affect the verdict." *Id.* More specifically, to find such a constitutional error harmless, we must find—beyond a reasonable doubt—that "*any reasonable jury* would have reached the same result,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

despite the error." *State v. Aumick*, 126 Wn.2d 422, 430, 894 P.2d 1325 (1995) (emphasis added).

The State bears the burden of showing that the constitutional error was harmless. *Monday*, 171 Wn.2d at 680. The State contends that admitting the booking forms was harmless error because of other, untainted evidence of gang involvement that was also presented at trial. The other evidence included the clothes the defendants were wearing (some of which included the color red, which is associated with Norteño gangs), certain tattoos that included gang symbols, a photo on Anthony DeLeon's cell phone that derogatorily referenced the Sureño gang, and certain songs and music groups that were on Anthony DeLeon's phone. 10 CDP (Oct. 14, 2010) at 1667-71, 1676-81. The State also presented evidence from a witness who indicated that she had known two of the defendants to be gang members when they were in high school (although notably Anthony DeLeon was 29 and Octavio Robledo was 23 at the time of the shooting). 8 CDP (Oct. 11, 2010) at 1421, 1423. The strongest untainted evidence was testimony by Officer Ortiz, who interviewed the three defendants after their arrest. He indicated that Ricardo DeLeon denied any gang affiliation, and that Anthony DeLeon mentioned two gangs, although the exact nature of the question and answer was not clear. 12 CDP (Oct. 18, 2010) at 1904-05.

Overall, none of this untainted evidence of gang involvement was as strong, direct, or persuasive as admissions made by the defendants themselves. The strongest

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

evidence that a person is a gang member is their own clear admission. *See, e.g.,* *Fulminante*, 499 U.S. at 296 ("A confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.'" (quoting *Bruton v. United States*, 391 U.S. 123, 139-40, 88 S Ct. 1620, 20 L. Ed. 2d 476 (1968) (White, J. dissenting))). That evidence—gathered during the jail intake process for the purpose of protecting the defendants from real and immediate threats of violence—was presented to the jury in this case, in violation of the defendants' Fifth Amendment rights. The heavy weight of that evidence does not compare to the untainted evidence presented by the State, which was largely indirect and outdated. Therefore, we cannot say that *beyond a reasonable doubt* that *any reasonable jury* would have reached the same result if given only the untainted evidence. In light of the harmful unconstitutional evidence presented at trial, we must reverse these convictions and gang aggravators. Defendants are entitled to a new trial untainted by such evidence.

Lastly, we are concerned by some of the questionable musical evidence presented by the State as evidence of gang involvement. This evidence was cited by the Court of Appeals as "untainted" evidence of gang membership. *DeLeon*, 185 Wn. App. at 205. For example, the Court of Appeals noted that a song by Los Tigres Del Norte was stored on Anthony DeLeon's cell phone, and indicated that this was evidence of gang involvement. *Id.* at 187. We find this conclusion troublesome. Los

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Tigres Del Norte has been one of the more prominent bands in Latin music for decades. Since forming in 1968, Los Tigres Del Norte have sold 32 million albums. They have won five Latin Grammy awards, and they have performed in front of U.S. troops serving abroad. There is no support in the record for the contention that enjoying their music is evidence of gang involvement. While this may not be the primary issue in this case, we felt that it was nonetheless important to take this opportunity to remind courts to exercise far more caution when drawing conclusions from a defendant's musical preferences.

2. *Much of the generalized gang evidence was irrelevant and prejudicial, and thus should not have been admitted*

As explained above, we reverse these convictions because of the unconstitutional admission of involuntary statements from the defendants' jail intake forms, which was not harmless beyond a reasonable doubt. Additionally, defendants challenge some of the testimony given by a gang expert regarding the general nature of gangs. Since we already reverse these convictions, we need not decide whether this generalized gang testimony, on its own, requires reversal. However, we take this opportunity to caution courts about the prejudice that can result from erroneously admitting this type of irrelevant and problematic generalized gang testimony.

"Evidence which is not relevant is not admissible." ER 402. In addition, evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b). However, such

evidence may be admissible for other purposes, such as proof of motive. *Id.*

Defendants contend that some of Officer Ortiz's testimony regarding the general

nature of gangs was improperly admitted under ER 402 and ER 404(b) because it was

not proof of motive and was not itself relevant.

The Court of Appeals agreed that the evidence was improperly admitted, and

expressed great concern about the error. *DeLeon*, 185 Wn. App. at 197. We agree

that large portions of Officer Ortiz's testimony should not have been admitted because

the information at issue related to certain aspects of gang operations (such as gangs

"jumping in" new members, leaders "ordering hits" from prison, and members

threatening others via the Internet) that had absolutely no relevance to this case. We

note that the improperly admitted evidence did not consist of simply one or two

offhand comments. Officer Ortiz gave extensive testimony on how gangs generally

operate, which frequently crossed the line into inflammatory statements regarding

gang members. For instance, he testified that "[t]hey do some really, really bad

crimes out there, whether they get caught or not." 12 CDP (Oct. 18, 2010) at 1930.

We do not see any probative value in such a statement, but there is certainly prejudice.

The Court of Appeals acknowledged as much when it said that this evidence "could

suggest to the jury the 'forbidden inference' underlying ER 404(b) that the defendants

were part of a pervasive gang problem and were criminal-types with a propensity to

commit the crimes charged." *DeLeon*, 185 Wn. App. at 196 (internal quotation marks

omitted) (quoting *State v. Mee*, 168 Wn. App. 144, 159, 275 P.3d 1192 (2012)). The Court of Appeals cautioned trial courts to "carefully apply ER 403 in determining the quantity and nature of gang affiliation testimony that will be admitted." *Id.* at 197. We agree and urge courts to use caution when considering generalized gang evidence. Such evidence is often highly prejudicial, and must be tightly constrained to comply with the rules of evidence.

## CONCLUSION

Under the Fifth Amendment, defendants cannot be compelled to testify against themselves. Statements made by the defendants can be admitted only if they were made voluntarily. In this case, the defendants made self-incriminating statements to avoid a credible risk of physical violence. By their very nature, such statements cannot be considered voluntary, and they should not have been admitted. These defendants are entitled to a new trial. Therefore, we reverse these convictions and gang aggravators.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

WE CONCUR:

Madsen, C.J.

Johnson, J.

Fairhurst, J.

Stephens, J.

Wiggins, J.

González, J.

Gordon McCloud, J.

Yu, J.