**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Filed
Washington State
Court of Appeals
Division Two

November 22, 2022

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55682-1-II |
| Appellant, | (Consol. with No. 55689-8-II) |
| v. | |
| DWAYNE ALLEN FLANNERY, | PUBLISHED OPINION |
| Respondent. | |

LEE, J. — The State appeals the trial court's orders vacating a firearm surrender order and dismissing Dwayne A. Flannery's charge for failure to comply with the former firearm surrender order. The State argues that the trial court erred by declaring the firearm surrender statutory scheme unconstitutional as violating the Fourth and Fifth Amendments to the United States Constitution and Washington Constitution article I, sections 7 and 9; vacating the surrender order; and dismissing Flannery's charge for failure to comply with that order.

We hold that the trial court did not err by declaring the former firearm surrender statutory scheme at issue unconstitutional. Accordingly, we affirm the trial court's orders vacating the firearm surrender order and dismissing Flannery's criminal charge for failure to comply with the firearm surrender order.

No. 55682-1-II (Consol. w/No. 55689-8-II)

FACTS

The State charged Flannery with second degree assault, and the trial court entered a no-contact order pursuant to RCW 10.99.040(2)(a).[1] The trial court also entered an order requiring Flannery to surrender any firearms. When Flannery did not comply with the firearm surrender order, the State filed a criminal charge against Flannery for non-compliance. Flannery moved to vacate the surrender order and dismiss the added criminal charge. Flannery's briefing to the trial court contended that the surrender order violated his privilege against self-incrimination and his right to be free from unreasonable searches and seizures.

A.      BACKGROUND—FIREARM SURRENDER STATUTORY SCHEME

When a trial court entered a protection order against a person, the court was authorized, in certain circumstances, to prohibit that person from having firearms and could require the person to surrender their firearms under former RCW 9.41.800 (2019). In 2021, the legislature overhauled the statutory scheme for various types of protection orders through House Bill 1320 and included the addition of an immunity provision to the firearm surrender statutory scheme. LAWS OF 2021, ch. 215. The immunity provision under the new statutory scheme applies to surrender orders issued pursuant to RCW 9.41.800 and states:

> [T]he act of voluntarily surrendering firearms or weapons, or providing testimony relating to the surrender of firearms or weapons, pursuant to such an order, may not

---

[1] RCW 10.99.040(2)(a) provides that courts authorizing pre-trial release for individuals charged with crimes involving domestic violence shall determine if the defendant should have a no-contact order with the victim.

RCW 10.99.040 was amended in 2022. However, no substantive changes were made affecting this opinion. Therefore, we cite to the current statute.

2

No. 55682-1-II (Consol. w/No. 55689-8-II)

> be used against the respondent or defendant in any criminal prosecution under this chapter, chapter 9.41 RCW, or RCW 9A.56.310.

LAWS OF 2021, ch. 215, § 75. The legislature also added, under the heading "miscellaneous," the following:

> Nothing in this act affects the validity of protection orders issued prior to the effective date of this section under chapter 74.34 RCW or any of the former chapters 7.90, 7.92, 7.94, 10.14, and 26.50 RCW. *Protection orders entered prior to the effective date of this section under chapter 74.34 RCW or any of the former chapters 7.90, 7.92, 7.94, 10.14, and 26.50 RCW are subject to the provisions of this act* and are fully enforceable under the applicable provisions of sections 56 through 60 of this act and may be modified or terminated in accordance with the applicable provisions of sections 61 through 65 of this act.

LAWS OF 2021, ch. 215, § 65 (emphasis added). Most of the act, including the relevant provisions, took effect on July 1, 2022. LAWS OF 2021, ch. 215, § 87.

Generally, we presume that statutes operate prospectively unless "'(1) the Legislature explicitly provides for retroactivity, (2) the amendment is curative, or (3) the statute is remedial.'" *Kellogg v. Nat'l R.R. Passenger Corp.*, 199 Wn.2d 205, 220, 504 P.3d 796 (2022) (internal quotation marks omitted) (quoting *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 223, 173 P.3d 885 (2007)). "Curative" means that it "'clarifies or technically corrects an ambiguous statute.'" *Id.* (internal quotation marks omitted) (quoting *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 584, 146 P.3d 423 (2006)). "Remedial" means that it "'relates to practice, procedure or remedies, and does not affect a substantive or vested right.'" *Id.* (internal quotation marks omitted) (quoting *In re. F.D. Processing, Inc.*, 119 Wn.2d 452, 462-63, 832 P.3d 1303 (1992)).

On the first prong of the retroactivity analysis, the legislature did not explicitly provide for retroactivity. The retroactivity provision states that *protection orders* entered before the effective date are subject to the provisions of the act. It does not state that *surrender orders* entered before

3

No. 55682-1-II (Consol. w/No. 55689-8-II)

the effective date are subject to the provisions of the act. Additionally, Flannery's no-contact order and corresponding firearm surrender order were issued pursuant to chapter 10.99 RCW, not one of the chapters listed in the retroactivity provision above. The relevant portion of chapter 10.99 RCW relates specifically to individuals who are charged with a crime involving domestic violence and states that courts authorizing pre-trial release shall determine if the defendant should have a no-contact order with the victim. RCW 10.99.040(2)(a). It provides that, in issuing the no-contact order, the court shall consider the firearm surrender statutory provisions (RCW 9.41.800) and shall order the defendant to surrender firearms. RCW 10.99.040(2)(b). In contrast, the chapters listed in the retroactivity provision relate to protection orders issued after a victim petitions for them. Therefore, the legislature did not explicitly provide for retroactive application to Flannery's case.

On the "curative" prong, there is no indication in the session law text that the amendment was meant to clarify or technically correct an ambiguous statute.

On the "remedial" prong, to be remedial, the provision cannot affect a substantive or vested right. The new provision provides immunity, which affects a substantive or vested right.

Therefore, because (1) the legislature did not explicitly provide for retroactivity, (2) the immunity provision is not curative, and (3) the immunity provision is not remedial, the newly enacted immunity provision is not retroactive. The applicable statute here is former RCW 9.41.800.

Former RCW 9.41.800(1) provided that

[a]ny court when entering an order authorized under chapter 7.92 RCW, RCW 7.90.090, 9A.46.080, 10.14.080, 10.99.040, 10.99.045, 26.09.050, 26.09.060, []26.10.040,[2] []26.10.115, 26.26B.020, 26.50.060, 26.50.070, or 26.26A.470

---

[2] RCW 26.10.040 was repealed in 2020. LAWS OF 2020, ch. 312, § 905.

4

No. 55682-1-II (Consol. w/No. 55689-8-II)

shall, upon a showing by clear and convincing evidence, that a party has: Used, displayed, or threatened to use a firearm or other dangerous weapon in a felony, or is ineligible to possess a firearm under the provisions of RCW 9.41.040:

(a) Require that the party immediately surrender all firearms and other dangerous weapons;

(b) Require that the party immediately surrender any concealed pistol license issued under RCW 9.41.070;

(c) Prohibit the party from accessing, obtaining, or possessing any firearms or other dangerous weapons;

(d) Prohibit the party from obtaining or possessing a concealed pistol license.

Thus, the list of authorized orders in former RCW 9.41.800(1) included stalking protection orders (former chapter 7.92 RCW, *repealed by* LAWS OF 2021, ch. 215, § 170), sexual assault protection orders (former RCW 7.90.090, *repealed by* LAWS OF 2021, ch. 215, § 170), harassment protection orders (RCW 9A.46.080), temporary anti-harassment protection orders (former RCW 10.14.080, *repealed by* LAWS OF 2021, ch. 215, § 170), no-contact orders in criminal cases involving domestic violence (RCW 10.99.040 and .045), restraining orders in dissolution proceedings (RCW 26.09.050 and .060), restraining orders resulting from child custody proceedings (former RCW 26.10.115, *repealed by* LAWS OF 2021, ch. 215, § 170 and RCW 26.26B.020), petitioner-initiated domestic violence protection orders (former RCW 26.50.060 and .070, *repealed by* LAWS OF 2021, ch. 215, § 170), and restraining orders issued in proceedings to adjudicate parentage (RCW 26.26A.470).

Courts entering these protection orders were permitted to order a party to surrender their firearm in a variety of circumstances. Courts were permitted to require a party to surrender firearms upon a showing by a preponderance of the evidence but not by clear and convincing

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55682-1-II (Consol. w/No. 55689-8-II)

evidence that the party used, displayed, or threatened to use a firearm or other dangerous weapon

in a felony, or was ineligible to possess a firearm. Former RCW 9.41.800(2). Courts were also

permitted to order a temporary firearm surrender without notice to the other party if it found that

the time for response could result in irreparable injury. Former RCW 9.41.800(4). And courts

could order a party to surrender their firearms if it found that their possession of a firearm presented

a serious and imminent threat to public health or safety, or to the health or safety of any individual.

Former RCW 9.41.800(5). But courts were *required* to order a party to surrender their firearms

during any period of time that a person was subject to one of the authorized protection orders that

explicitly prohibited the use of physical force against an intimate partner or child. Former RCW

9.41.800(3)(c)(ii).

Former RCW 9.41.801(2) (2020) described the process for law enforcement officers to

serve orders that included firearm surrender orders and provided that

> [a] law enforcement officer serving a protection order, no-contact order, or
> restraining order that includes an order to surrender all firearms, dangerous
> weapons, and a concealed pistol license under RCW 9.41.800 shall inform the
> respondent that the order is effective upon service and the respondent must
> immediately surrender all firearms and dangerous weapons in his or her custody,
> control, or possession and any concealed pistol license issued under RCW 9.41.070,
> and conduct any search permitted by law for such firearms, dangerous weapons,
> and concealed pistol license. The law enforcement officer shall take possession of
> all firearms, dangerous weapons, and any concealed pistol license belonging to the
> respondent that are surrendered, in plain sight, or discovered pursuant to a lawful
> search. The order must be personally served upon the respondent or defendant if
> the order is entered in open court in the presence of the respondent or defendant.
> The respondent or defendant shall acknowledge receipt and service. If the
> respondent or defendant refuses service, an agent of the court may indicate on the
> record that the respondent or defendant refused service. The court shall enter the
> service and receipt into the record. A copy of the order and service shall be
> transmitted immediately to law enforcement. The respondent must immediately
> surrender all firearms, dangerous weapons, and any concealed pistol license in a

6

No. 55682-1-II (Consol. w/No. 55689-8-II)

safe manner to the control of the local law enforcement agency on the day of the hearing at which the respondent was present.

Former RCW 9.41.801(6) described the court's responsibility to verify a party's compliance with firearm surrender orders and provided that

[c]ourts shall develop procedures to verify timely and complete compliance with orders to surrender weapons under RCW 9.41.800, including compliance review hearings to be held as soon as possible upon receipt from law enforcement of proof of service. A compliance review hearing is not required if the court can otherwise enter findings on the record or enter written findings that the proof of surrender or declaration of nonsurrender attested to by the person subject to the order, along with verification from law enforcement and any other relevant evidence, makes a sufficient showing that the person has timely and completely surrendered all firearms and dangerous weapons in their custody, control, or possession, and any concealed pistol license issued under RCW 9.41.070, to a law enforcement agency. If the court does not have a sufficient record before it on which to make such a finding, the court must set a review hearing to occur as soon as possible at which the respondent must be present and provide proof of compliance with the court's order.

When a person was ordered to surrender their firearms, they must file a proof of surrender and receipt form or a declaration of nonsurrender form within five judicial days of the entry of the surrender order. RCW 9.41.804. Finally, any violation of the firearm surrender statutes was punishable by law. RCW 9.41.810.

B.    FACTS OF FLANNERY'S CASE

Flannery was arraigned on a charge for second degree assault with a special allegation that the assault constituted domestic violence involving a family or household member. The allegations supporting the charge did not relate to firearms. The State sought and was granted a domestic violence no-contact order under chapter 10.99 RCW.[3] The no-contact order prohibited

_____

[3] Chapter 10.99 RCW provides that courts may issue no-contact orders when releasing from custody individuals charged with or arrested for crimes involving domestic violence. RCW

7

No. 55682-1-II (Consol. w/No. 55689-8-II)

Flannery from obtaining, owning, possessing, or controlling any firearm. The no-contact order instantaneously made it a felony offense for Flannery to own, possess, or control firearms pursuant to former RCW 9.41.040(2)(a)(iii) (2020).

The State also sought an order for Flannery to surrender weapons pursuant to former RCW 9.41.800. Flannery filed a written objection and proposed order, asking the trial court to find that he had a constitutional privilege against self-incrimination that entitled him to refrain from complying with the affirmative requirements of the order to surrender weapons. The trial court declined to sign Flannery's proposed order and instead signed the State's proposed order to surrender weapons.

The order to surrender weapons directed Flannery to either (1) immediately surrender any firearms or dangerous weapons in his possession or control and turn them in to the Kitsap County Sheriff's Office along with a sworn statement declaring he had done so or (2) immediately sign a different sworn statement declaring that he had not surrendered any of the legally prohibited items because he did not at that time possess any of those items. The order stated that, if Flannery did not do either of those things, he could be found in contempt of court and/or be charged with a misdemeanor or felony and punished accordingly.

The State filed a criminal charge against Flannery for knowingly failing to file either the sworn proof of surrender form or the declaration of non-surrender form within the statutory time frame. Flannery moved to vacate the surrender order and dismiss the added criminal charge.

---

10.99.040(2)(a). In issuing the order, the court shall consider the provisions of RCW 9.41.800 and order the defendant to surrender firearms. RCW 10.99.040(2)(b).

No. 55682-1-II (Consol. w/No. 55689-8-II)

Flannery argued that former RCW 9.41.800, former RCW 9.41.801, RCW 9.41.804, and the surrender order violated his privilege against self-incrimination under the Fifth Amendment to the United States Constitution and Washington Constitution article I, section 9. Specifically, Flannery's briefing argued that it was unlawful for him to own or possess firearms when the no-contact order was entered, so a later order to surrender weapons and sign a declaration would force him to incriminate himself unless there is some grant of immunity to him. Flannery contended that "all defendants subject to [a surrender order]" have their self-incrimination privilege implicated "because they are all prohibited by operation of law from possessing firearms . . . and their possession of firearms is the very subject about which the court is now ordering them to make a testimonial statement." Clerk's Papers (CP) at 39.

Flannery's briefing also argued that former RCW 9.41.800, former RCW 9.41.801, and the surrender order violated his right to remain free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Washington Constitution article I, section 7. Specifically, Flannery argued that the surrender order directed him to search his own home, seize any firearms, and convey those items to law enforcement without reasonable suspicion or probable cause that he possessed them. On this issue, Flannery's brief adopted in its entirety the reasoning and reliance on the authorities in a 154-page memorandum decision and order issued by the Kitsap County District Court in a separate case on May 27, 2020.[4] Flannery asked the trial

---

[4] Memorandum Decision and Order, *State v. Zachary James Marshall*, No. 23650101 (Kitsap County Dist. Ct. May 27, 2020).

9

No. 55682-1-II (Consol. w/No. 55689-8-II)

court to relieve him from complying with the surrender order, dismiss the criminal charge for noncompliance with the order, and find the statutory scheme unconstitutional and void.

The trial court ruled that the statutory scheme was unconstitutional because it violated the constitutional privilege against self-incrimination and the constitutional protection against unreasonable searches. The trial court vacated the order to surrender weapons and dismissed the criminal charge for noncompliance with the surrender order. The trial court made written findings of fact and conclusions of law, including the following:

> That the Court concludes that the Order to Surrender Weapons and the statutory scheme from which it is derived requiring that a defendant provide a testimonial statement regarding her [sic] possession of weapons that she [sic] is legally prohibited from possessing at the time of the declaration violates the Fifth Amendment privilege against self-incrimination and analogous provision in Article I, section 9 of the Constitution of the State of Washington.

CP at 250 (footnote omitted).

> That the Court additionally concludes that the Order to Surrender Weapons and the statutory scheme from which it's derived violates the Fourth Amendment to the U.S. Constitution and Article I, section 7 of the Constitution of the State of Washington to the extent the order directs a defendant to search his home for firearms and other dangerous weapons and bring those items to law enforcement during a period when such possession and delivery of those items would constitute a criminal law violation since there is no immunity from prosecution for him set forth in the statute.

CP at 250-51.[5]

The State appeals.

---

[5] The trial court specified that the unconstitutional statutory scheme consisted of former RCW 9.41.800(1)(a)-(b), (2)(a)-(b), (3)(c)(ii)(A)-(B), (4)-(5), and (7); former RCW 9.41.801(2) and (6); RCW 9.41.804 and .810.

No. 55682-1-II (Consol. w/No. 55689-8-II)

ANALYSIS

A.    STANDARD OF REVIEW

We review issues of constitutionality de novo. *State v. Sieyes*, 168 Wn.2d 276, 281, 225 P.3d 995 (2010). In challenges to the constitutionality of a statute, the party asserting that the statute is unconstitutional "bears a heavy burden, for we presume that legislative enactments are constitutional." *State v. Gresham*, 173 Wn.2d 405, 428, 269 P.3d 207 (2012). The person challenging the statute "must, by argument and research, convince the court that there is no reasonable doubt that the statute violates the constitution." *Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998). Because the legislature speaks for the people, we are hesitant to strike a statute unless we are "'fully convinced, after a searching legal analysis, that the statute violates the constitution.'" *Gresham*, 173 Wn.2d at 428 (quoting *Island County*, 135 Wn.2d at 147). "Ultimately, however, it is for the judiciary to determine whether a given enactment violates the constitution." *Id.*[6]

---

[6] Flannery does not expressly state whether he is raising a facial or as-applied challenge. However, Flannery's briefing to the trial court and to this court appear to raise a facial challenge.

To the extent that issues or arguments not raised by the State may affect the constitutional analysis of the firearm surrender statutory scheme or the orders in Flannery's case, we do not consider them because those issues are not before this court. *See* RAP 12.1; *Wash. Pro. Real Est. LLC v. Young*, 163 Wn. App. 800, 818 n.3, 260 P.3d 991 (2011) ("[This court does] not decide a case on the basis of issues that were not set forth in the parties' briefs."), *review denied*, 173 Wn.2d 1017 (2012).

11

No. 55682-1-II (Consol. w/No. 55689-8-II)

B.      SELF-INCRIMINATION—FIFTH AMENDMENT AND ARTICLE I, SECTION 9

The State argues that the trial court erred in declaring the firearm surrender statutory scheme unconstitutional as violating the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution. The State contends that the trial court erred because any incriminating responses could not be used against Flannery. Specifically, the State argues that an individual's statements about compliance or noncompliance with firearm surrender orders cannot be used against that individual because RCW 10.52.090 and CrR 6.14 provide immunity for individuals complying with firearm surrender orders. The State also argues that a constitutional violation does not occur when the State asks for the information, but only when the State later uses the compelled answers against the speaker. We disagree.

1.      Legal Principles

The Fifth Amendment to the United States Constitution commands that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. And article I, section 9 of the Washington Constitution provides that "[n]o person shall be compelled in any criminal case to give evidence against himself." "The federal and state provisions give the same level of protection." *In re Dependency of A.M.-S.*, 196 Wn.2d 439, 445, 474 P.3d 560 (2020).

The Fifth Amendment "'permits a person to refuse to testify at a criminal trial'" and to "'refuse to answer official questions asked in any other proceeding, where the answer might tend to incriminate [them] in future criminal proceedings.'" *Family of Butts v. Constantine*, 198 Wn.2d 27, 63, 491 P.3d 132 (2021) (quoting *King v. Olympic Pipe Line Co.*, 104 Wn. App. 338, 351, 16 P.3d 45 (2000), *review denied*, 143 Wn.2d 1012 (2001)).

12

No. 55682-1-II (Consol. w/No. 55689-8-II)

> In any type of proceeding, "a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. . . . Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later [proceeding]."

*State v. King*, 130 Wn.2d 517, 524, 925 P.2d 606 (1996) (internal quotation marks omitted) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984)). Thus, Fifth Amendment claims generally entail two considerations: "whether the defendant's statements exposed him to a 'realistic threat of self-incrimination' in a subsequent proceeding" and whether the State "has sought to 'impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.'" *United States v. Antelope*, 395 F.3d 1128, 1135 (9th Cir. 2005) (quoting *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S. Ct. 2132, 53 L. Ed. 2d 1 (1977)); *King*, 130 Wn.2d at 524 (quoting *Murphy*, 465 U.S. at 427).

    2.    Realistic Threat of Self-Incrimination

The State argues that there is no realistic threat of self-incrimination because RCW 10.52.090 and CrR 6.14 provide immunity from later prosecution for individuals complying with firearm surrender orders. We disagree.

    a.    RCW 10.52.090

RCW 10.52.090 provides that

> [i]n every case where it is provided in []this act that a witness shall not be excused from giving testimony tending to criminate himself or herself, no person shall be excused from testifying or producing any papers or documents on the ground that his or her testimony may tend to criminate or subject him or her to a penalty or forfeiture; *but he or she shall not be prosecuted or subjected to a penalty or forfeiture for or on account of any action, matter or thing concerning which he or*

13

No. 55682-1-II (Consol. w/No. 55689-8-II)

> *she shall so testify, except for perjury or offering false evidence committed in such testimony.*

(Emphasis added.) The reviser's note following RCW 10.52.090 refers readers to the note following RCW 9.01.120 for the meaning of "this act." The note following RCW 9.01.120 explains that "this act" refers to Laws of 1909, ch. 249, which codifies over one hundred statutes that are listed in the note. The list of statutes in the note does not include any of the statutes in the firearm surrender statutory scheme.[7] Thus, to the extent that RCW 10.52.090 provides immunity from later prosecution, it does not provide immunity for individuals complying with firearm surrender orders. Therefore, the State's argument that RCW 10.52.090 provides immunity to individuals complying with firearm surrender orders fails.

b. CrR 6.14

CrR 6.14 provides that

> [i]n any case the court on motion of the prosecuting attorney may order that a witness shall not be excused from giving testimony or producing any papers, documents or things, on the ground that such testimony may tend to incriminate or subject the witness to a penalty or forfeiture; *but the witness shall not be prosecuted or subjected to criminal penalty or forfeiture for or on account of any transaction, matter, or fact concerning which the witness has been ordered to testify pursuant to this rule.* The witness may nevertheless be prosecuted for failing to comply with the order to answer, or for perjury or the giving of false evidence.

(Emphasis added.) By its plain language, CrR 6.14 allows for grants of immunity, but only upon the motion of a prosecutor. Indeed, "CrR 6.14 unambiguously vests the decision on whether to grant immunity with the prosecution." *State v. Carlisle*, 73 Wn. App. 678, 681, 871 P.2d 174

---

[7] The statutes in the firearm surrender statutory scheme include former RCW 9.41.800(1)(a)-(b), (2)(a)-(b), (3)(c)(ii)(A)-(B), (4)-(5), and (7); former RCW 9.41.801(2) and (6); and RCW 9.41.804 and .810.

No. 55682-1-II (Consol. w/No. 55689-8-II)

(1994).[8]   Because the granting of immunity pursuant to CrR 6.14 depends on prosecutor's discretion in individual cases, CrR 6.14 does not uniformly provide immunity to individuals who comply with firearm surrender orders.

The State's argument that there is no realistic threat of self-incrimination because RCW 10.52.090 and CrR 6.14 provide immunity to individuals complying with firearm surrender orders fails.

      3.      Substantial Penalties for Exercising Right

The State also argues that a constitutional violation does not occur when the State requires compliance with the surrender order, but only when the State later uses the compelled answers in prosecution.  The State cites *State v. DeLeon*, 185 Wn.2d 478, 374 P.3d 95 (2016), for the proposition that the privilege against self-incrimination is not violated when the State compels answers, but instead when the State uses those compelled answers against the speaker.  We disagree.

In *DeLeon*, jail staff asked three criminal defendants about their gang affiliations as part of the jail booking process to provide safe housing with protection from rival gangs.  *Id.* at 483-84. The individuals answered the jail staff's questions, and the answers were used against the defendants in criminal proceedings.  *Id*.  Our Supreme Court held that the admission of the defendants' statements was a violation of their Fifth Amendment rights.  *Id.* at 487.  In so holding, the Court stated:

> We wish to emphasize that *asking* these questions was not a constitutional violation.  Indeed, jail staff may be required to ask these questions in order to meet

---

[8] Here, nothing in the record suggests that the prosecution attempted to grant immunity to Flannery for his compliance with the surrender order.

No. 55682-1-II (Consol. w/No. 55689-8-II)

> their constitutional duty "'to protect prisoners from violence at the hands of other prisoners.'" *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.1988)). The constitutional violation occurred when the State then used the statements gathered under these circumstances against the defendants at their trial.

*Id*.

The State quotes this language and argues that *DeLeon* stands for the principle that Fifth Amendment violations do not occur at the time of the compelled testimony but instead when the State seeks to use the compelled testimony against the speaker. But in the firearm surrender process, a crucial step occurred between asking the question and using it against the speaker: the State's compulsion of the answer. A person under a firearm surrender order was required to comply with the order or be subjected to criminal penalties. RCW 9.41.810. Indeed, the State filed a criminal charge against Flannery for noncompliance with the firearm surrender order after he asserted his privilege against self-incrimination. No such compulsion or punishment from the State existed in *DeLeon*.

"A Fifth Amendment analysis also requires a determination of whether the government has imposed penalties so great as to compel testimony because a witness exercised his Fifth Amendment rights." *State v. Powell*, 193 Wn. App. 112, 119, 370 P.3d 56 (2016). A person cannot be sanctioned for invoking the constitutional privilege to refuse to answer incriminating questions. *See Cunningham*, 431 U.S. at 805 ("[A] State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself."); *Powell*, 193 Wn. App. at 119 (holding that Fifth Amendment violation occurred where State punished defendant for asserting his right to remain silent).

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55682-1-II (Consol. w/No. 55689-8-II)

Here, the State has the ability to, and did, impose a substantial penalty, criminal prosecution, for Flannery's assertion of his privilege against self-incrimination. This violates Flannery's rights under the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution. *See Cunningham*, 431 U.S. at 805; *Powell*, 193 Wn. App. at 119. Therefore, the State's argument that the privilege against self-incrimination cannot be violated until the State uses compelled answers against a person fails.

The State has not shown that the trial court erred in declaring the firearm surrender statutory scheme unconstitutional. Therefore, we hold that the trial court did not err in declaring that the firearm surrender statutory scheme violates the Fifth Amendment and article I, section 9.

C. SEARCH—FOURTH AMENDMENT AND ARTICLE I, SECTION 7

The State argues that the trial court erred in declaring the firearm surrender statutory scheme unconstitutional as violating the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution. Specifically, the State argues that the trial court erred by declaring the firearm surrender statutory scheme unconstitutional as violating the right against unreasonable searches because the fruits of the illegal search cannot be used against Flannery or other defendants. The State in effect argues that no constitutional violation occurs at the time of the illegal search but instead when the fruits of the illegal search are used against a defendant. We disagree.

The Fourth Amendment prohibits unreasonable searches and seizures, and article I, section 7 of the Washington Constitution prohibits any invasion of an individual's right to privacy without

17

No. 55682-1-II (Consol. w/No. 55689-8-II)

authority of law.[9]  *State v. Betancourth*, 190 Wn.2d 357, 366, 413 P.3d 566 (2018).  Generally, a prosecutor may not use the fruits of an illegal search as evidence against a defendant at trial.  *State v. Nusbaum*, 126 Wn. App. 160, 168, 107 P.3d 768 (2005).

Here, the State argues that no constitutional violation occurs at the time of an illegal search, but only when the fruits of that illegal search are later used to prosecute.  The State does not provide authority to support this proposition.  When a party cites no authority in support of a proposition, this court may assume counsel has found none.  *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).  For this reason alone, the State's argument fails.

Moreover, both federal and state case law contradict the State's argument.  A Fourth Amendment or article I, section 7 violation occurs at the time of the illegal search, even if the fruits of the illegal search are not later used to prosecute a defendant.  *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 325, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978) (injunction granted against statutory scheme allowing warrantless inspections of commercial buildings in violation of Fourth Amendment); *City of Seattle v. Mesiani*, 110 Wn.2d 454, 455, 755 P.2d 775 (1988) (sobriety checkpoints violated petitioners' rights under article I, section 7 and Fourth Amendment; petitioners consisted of defendants charged with criminal violations and group of plaintiffs

---

[9] The State provides a single argument on the state and federal constitution and notes in passing that the Washington Constitution more broadly defines a search as an unreasonable intrusion into a person's private affairs.  The State does not analyze the provisions separately nor does the State explain how the state and federal constitution may differ on the issues raised in its brief.  Therefore, we decline to engage in an independent state law analysis here without foreclosing the possibility of such an analysis in a future case with sufficient briefing.  *See State v. Elwell*, 199 Wn.2d 256, 265-66 n.1, 505 P.3d 101 (2022) (no independent state law analysis required where parties simply mentioned state constitution in briefs and noted that article I, section 7 is often more protective than Fourth Amendment).

No. 55682-1-II (Consol. w/No. 55689-8-II)

routinely stopped at sobriety checkpoints). Therefore, the State's argument that no constitutional violation occurs until the fruits of an illegal search are used to prosecute fails.

CONCLUSION

The trial court did not err in declaring the former firearm surrender statutory scheme unconstitutional as violating the Fourth and Fifth Amendments to the United States Constitution and article I, sections 7 and 9 of the Washington Constitution. Accordingly, the trial court did not err in vacating Flannery's surrender order and dismissing the prosecution for noncompliance with the surrender order. We affirm.

Lee, J.

We concur:

Worswick, P.J.

Veljacic, J.